UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHAKUR AL-AMIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) NO. 3:20-cv-00413 |
| STATE OF TENNESSEE, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

### I. Introduction

Shakur Al-Amin, an inmate in the custody of the Davidson County Sheriff, filed a pro se complaint under 42 U.S.C. § 1983 "for damages/injuries and illegal incarceration" on May 13, 2020. (Doc. No. 1.) On June 1, 2020, Plaintiff filed documents styled "42 '1983' Complaint" (Doc. No. 3) and "Restraining Order" (Doc. No. 4) as well as a one-page, handwritten application to proceed in district court without prepaying fees or costs ("IFP application"). (Doc. No. 5.)

By Order entered June 17, 2020 (Doc. No. 6), the Court determined that Plaintiff was impermissibly attempting to assert civil rights violations and challenge the legality of his confinement in the same action, but that he primarily sought to assert civil rights violations under Section 1983 and to proceed without prepaying the filing fee applicable to such actions. See 28 U.S.C. § 1914(a). Because both the complaint and the IFP application were deficient, the Court ordered Plaintiff to use forms provided by the Clerk's Office to submit a complaint that complies with Federal Rule of Civil Procedure 8 and an IFP application that complies with 28 U.S.C. § 1915(a) within 30 days.

In a mailing sent before he received the Court's Order, Plaintiff filed another one-page, handwritten IFP application, this one unsigned (Doc. No. 7), along with a printout of his inmate trust account activity since November 2019. (Doc. No. 9.) He also filed multiple motions that are captioned for filing in Davidson County Criminal Court. (Doc. Nos. 10–14, 16–20.) These motions appear to be intended as exhibits in this case to demonstrate Plaintiff's exhaustion of state remedies. (See Doc. No. 23 at 2.)

On June 23, 2020, presumably before receiving the Court's Order of June 17, Plaintiff filed an affidavit in which he presents his settlement demands (Doc. No. 22), along with a second handwritten and unsigned complaint, which continues to pursue both damages under Section 1983 and relief in habeas corpus. (Doc. No. 23.) On June 26, Plaintiff filed a motion for a preliminary injunction concerning "process under a state garnishment statu[t]e" (Doc. No. 21), which he again filed on July 6 (Doc. No. 25) along with a raft of other documents, including motions to order his immediate release and transportation to the federal courthouse to receive his settlement payment (Doc. No. 24); to set his case "for trial or settlement" (Doc. No. 27); and, to set a "deadline on defendant's filing of third-party actions or amendments to allege comparative fault" (Doc. No. 28).

Finally, Plaintiff's July 6 filings include: what appears to be another complaint, though it lacks an initial page bearing the caption of this case and is handwritten except for two randomly inserted pages from the form complaint provided by the Clerk (Doc. No. 29); the remaining pages of the form complaint (Doc. No. 32); a new IFP application in response to the Court's June 17 Order, using the form provided by the Clerk (Doc. No. 30); and, a separate filing that includes a recent itemization of Plaintiff's inmate trust fund account history (Doc. No. 31 at 2).

**II. Review of Plaintiff's Filings**

As an initial matter, the Court admonishes Plaintiff that his piecemeal approach to filing must **STOP**. It is not helpful to the Court or to Plaintiff's own cause to have pages of his civil rights complaint, IFP application, and habeas corpus petitions strewn across multiple filings and received in separate mailings that the Clerk's Office must then attempt to collate and docket in the proper case. In the future, Plaintiff **MUST** clearly separate filings that belong in different cases under the appropriate case caption, and **MUST** ensure that each filing is complete, with all pages present at the time he submits the filing. Future submissions that do not comply with these directions may be returned to Plaintiff rather than filed.

**A. Application to Proceed IFP**

Under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application and the separate filing of his inmate trust account statement that he lacks the funds to pay the entire filing fee in advance, his application (Doc. No. 30) will be granted by separate Order.

**B. Initial Review of the Complaint**

**1. Legal Standard**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, 28 U.S.C. § 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review

of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and must take all well-pleaded factual allegations as true. Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

### 2. Allegations and Claims

The Court construes two of Plaintiff's July 6, 2020 filings (Doc. Nos. 29 and 32)—made in response to the Court's June 17, 2020 Order and utilizing the complaint form provided by the Clerk—in combination as his operative pleading in this case. Plaintiff names as Defendants (District) Attorney General Glen R. Funk; the two unknown police officers who arrested Plaintiff

4

Case 3:20-cv-00413   Document 34   Filed 07/31/20   Page 4 of 13 PageID #: 278

on June 26 and September 29, 2019; defense attorneys Courtney Tealsey, Sean McKenny, and James Moreland; Officers Kathern Noble and C. McIntrye,[1] along with 18 other (unnamed) officers of the Davidson County Sheriff's Office; the IRS Tax Office in Kansas City, Missouri; Walmart Supercenter Security on Dickerson Pike in Nashville; two individuals who allegedly robbed Plaintiff at Walmart, Shalonda R. Newton and Tracey R. Brown Sebree; unknown employees of the State of Tennessee; unknown officers of the Metro Police Department; Sheriff Daron Hall and his employees in the chain of command; President Donald Trump and his chain of command in Tennessee ("two senators, governor, and mayor of . . . Nashville"); Davidson County Criminal Court Judge Steve Dozier; and, the United States of America. (Doc. No. 29 at 1–4.)

Plaintiff alleges that he was arrested without probable cause or a warrant on June 29, 2019, was not read his Miranda rights, and was not taken to court within 48 hours as required by law. (Id. at 5.) Thereafter, his appointed defense attorneys Moreland, Tealsey, and McKenny all "quit," leading Plaintiff to request "to terminate all three and any future counsels" on April 30, 2020 so that he could defend himself. (Id. at 6.) Plaintiff alleges that he has not received a response to any of his pro se motions in Davidson County Criminal Court. (Id.)

Plaintiff next appears to claim that the IRS failed to send him a tax refund he is owed for tax year 2019. (Id. at 7.)

Plaintiff next alleges the following series of deprivations during his confinement:

I was food poisoned fe[d] allergic food constantly strip searched talked crazy to and beaten faced slammed ma[ced] and harassed almost every day by DCSO officers from 2019-August 2nd still till today 6/28/20. . . . But on 5-15-2020 C/O Kathern Noble C/O Levi McIntrye both ma[c]ed kicked slammed and punch my head right ear all for asking for 14th Amendment 8th Amendment and 1st Amendment rights which were violated daily cold food same allergic sweet and some food packs everyone else on kosher white inmates cheese stroganoff. I was not allowed access to courts dates put off 3 and 4 months. Denied legal books and tablets for law on

---

[1] Plaintiff elsewhere identifies this Defendant as Levi McIntrye. (See Doc. No. 29 at 7.)

> Oct 2nd 2019-Feb 2020 all but maybe (3 times)[.] . . . They keep cold air freezing on all day and harass me about anything, and everything racist prejudice.

(Id. at 7.)

In the appropriate fields on the form complaint provided to him, Plaintiff summarizes the basis of his claims by alleging that he was arrested illegally on June 26 and September 29, 2019; that he has sustained hand injuries from handcuffs and harm from "constant strip searches and sexual harassment food poison"; and, that he was assaulted by Correctional Officers Noble and McIntrye on May 15, 2020, causing injuries to his left ear, face, and eyes. (Doc. No. 32 at 1–3.) He is seeking an award of damages in excess of six million dollars, as well as his immediate release from confinement, restoration of his "citizenship rights," and expungement of his criminal record. (Id. at 1; Doc. No. 29 at 8.)

### 3. Analysis

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (See Doc. No. 29 at 4.) Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). A cause of action arises under Bivens when it is a federal actor who deprives the plaintiff of his federal rights. Except for this distinction, these actions are reviewed under the same legal principles and require the plaintiff to allege the same two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of law. Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014). In this case, Plaintiff alleges that his constitutional rights have been violated by his unlawful arrest and extended pretrial detention without appropriate action in state criminal court; the withholding

of his tax refund by the federal government; the conditions of his confinement in state custody; and, the use of excessive force against him by two correctional officers.

### a. Claims Related to Arrest, Detention, and State-Court Proceedings

Plaintiff alleges that his rights were violated when he was arrested maliciously and without a warrant, and then incarcerated illegally for ten months. (Doc. No. 29 at 4.) A claim of false arrest arises under the Fourth Amendment's prohibition of unreasonable seizures, and "requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005); see also Brooks v. Rothe, 577 F.3d 701, 706 (6th Cir. 2009). If the arrest was made without a warrant, it is nonetheless "reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Brooks, 577 F.3d at 706 (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). While Plaintiff alleges that he was twice arrested without probable cause, this allegation is entirely conclusory, and his complaint against the unnamed arresting officers is otherwise devoid of factual content that would lend support to the allegation. This claim is therefore subject to dismissal for failure to state a plausible claim to relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that a complaint does not state a plausible claim if it tenders "naked assertions devoid of further factual enhancement," or "mere conclusory statements").

Any claim of false imprisonment distinct from Plaintiff's false arrest claim may be considered "under the umbrella" of Fourth Amendment malicious prosecution, but such a claim is not viable under Section 1983 unless Plaintiff can establish, e.g., a lack of probable cause for his prosecution and the favorable resolution of the criminal proceedings against him. Robertson, 753 F.3d at 616. As stated above, Plaintiff has failed to allege facts to support his conclusory allegation that probable cause was lacking in his arrest or the decision to prosecute him. Furthermore,

7

Plaintiff's state criminal proceedings have not been resolved in his favor but are ongoing in Davidson County Criminal Court, where he is awaiting trial on multiple charges. (See Doc. No. 31 at 3.) Accordingly, Plaintiff's arrest on September 29, 2019 and his complaints about the events that followed, including the state court's failure to respond to his pro se motions and counsel's withdrawal from representation,[2] do not support a plausible claim to damages under a malicious prosecution theory.

Nor can the Court entertain Plaintiff's requests for the injunctive remedies of release from custody, expungement of his state charges, and restoration of his rights as a citizen. Even if such injunctive relief is requested against a proper defendant, it is clear that a federal court must abstain from enjoining pending state-court criminal proceedings absent the threat of "great and immediate" irreparable injury. Younger v. Harris, 401 U.S. 37, 46 (1971). Abstention in favor of state court proceedings is proper where there exists: (1) an ongoing state judicial proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Fieger v. Thomas, 74 F.3d 740, 744 (6th Cir. 1996). All three factors are present in this case, as Plaintiff alleges that state criminal proceedings against him are still pending; such proceedings undoubtedly implicate important state interests; and the state courts would presumably hear his federal constitutional claims. See Cooper v. Parrish, 203 F.3d 937, 954 (6th Cir. 2000). Although there is a narrow exception to this rule of abstention in cases of "proven" harassment, bad faith, or other extraordinary circumstances involving irreparable injury, Perez v.

---

[2] The Court further notes that criminal defense attorneys, whether private practitioners or public defenders, are not proper defendants to an action under Section 1983 because they do not act under color of state law when performing "traditional functions as counsel to a defendant in a criminal proceeding." Polk Cty. v. Dodson, 454 U.S. 312, 325 (1981).

8

Ledesma, 401 U.S. 82, 85 (1971), Plaintiff's allegations fall far short of meeting this standard. He therefore fails to state an actionable claim against any state or local official for the injunctive relief he seeks.

### b. Tax Refund Claim

Plaintiff alleges that, after filing his 2019 federal tax return and reporting income from 21 jobs, he had not received any tax refund in his inmate trust fund account. (Doc. No. 29 at 7; see Doc. No. 31 at 1.) In addition to the fact that this claim is misfiled as a Bivens claim, see Bell Consumers, Inc. v. Lay, 203 F. Supp. 2d 1202, 1208 (W.D. Wash. 2002) (finding Bivens action foreclosed in light of "the remedies provided by Congress, particularly the right to sue the government for a refund of taxes improperly collected") (citing Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990)), and misjoined in this action which otherwise concerns Plaintiff's arrest, prosecution, and incarceration by state and local authorities, see George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (under federal joinder rules, "[u]nrelated claims against different defendants belong in different suits"), no claim for a tax refund may be entertained in court "until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a); see United States v. Dalm, 494 U.S. 596, 602 (1990) ("[U]nless a claim for refund of a tax has been filed within the time limits imposed by [law], a suit for refund . . . may not be maintained in any court."). Plaintiff has not alleged that he has exhausted these administrative remedies.

For these reasons, any claim to relief in the form of a tax refund must be dismissed from this action.

### c. Conditions-of-Confinement Claims; Legal Materials Claim

Plaintiff alleges that unnamed Davidson County Sheriff's Officers poisoned his food or fed him food he was allergic to, strip-searched him, and otherwise harassed him "almost every day" between August 2, 2019 and June 28, 2020. (Doc. No. 29 at 7.) He refers the Court to his separately submitted grievances (see Doc. No. 31 at 6–34) for the details as to the "name[-]by[-]name to each situation." (Doc. No. 29 at 7.) Plaintiff further appears to allege that his food is served cold, that he is not served the same menu as white inmates, and that the temperature in the jail is kept too cold. (Id.)

The Court declines to consult Plaintiff's grievances in order to ferret out the details of his claims. It is Plaintiff who "must demonstrate 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Robertson, 753 F.3d at 615 (quoting Iqbal, 556 U.S. at 676). Although deserving of a liberal construction, pro se pleadings are not exempt from the requirement of alleging facts sufficient to state a plausible claim to relief, nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." Brown, 415 F. App'x at 613. Plaintiff's conditions-of-confinement claims are not supported by allegations concerning the actions of any particular Defendant but are "naked assertions devoid of further factual enhancement," and therefore cannot proceed. Iqbal, 556 U.S. at 678. His bare allegation that unnamed officers denied him legal research materials "all but maybe 3 times" prior to February 2020 (Doc. No. 29 at 7) suffers from the same defect of a lack of factual enhancement, as well as specifically lacking any allegation of injury from the denial of such materials. See Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996) (requiring plaintiffs asserting denial of access to courts to plead prejudice, such as denial of a court filing, due to inadequacy of prison law library). These claims must therefore be dismissed.

### d. Excessive Force Claim

In addition to generally alleging that he has been harassed and mistreated while incarcerated, Plaintiff specifically alleges that "on 5-15-2020 C/O Kathern Noble [and] C/O Levi McIntrye both ma[c]ed[,] kicked[,] slammed and punch[ed] my head [and] right ear all for asking for 14th Amendment[,] 8th Amendment[,] and 1st Amendment rights which where (sic) violated daily." (Doc. No. 29 at 7.) These allegations implicate Plaintiff's right to be free from the excessive use of force. A pretrial detainee's protection from excessive force comes from the Fourteenth Amendment. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). To prevail on an excessive force claim under the Fourteenth Amendment's Due Process Clause, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Id. The Supreme Court has expressly rejected application in the pretrial detention context of "a subjective standard that takes into account a defendant's state of mind." Id. The Court has also identified a non-exclusive list of factors that might be relevant to the objective reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

While further factual development may vindicate these Defendants' use of force against Plaintiff, for the purpose of initial review, Plaintiff's allegations to the effect that he was assaulted for asking questions or asserting his constitutional rights are sufficient to state an excessive force claim against Defendants Noble and McIntrye in their individual capacities.

#### e. Remaining Claims

Plaintiff does not specify the nature of any claims against Defendants Walmart Supercenter Security, Shalonda R. Newton, Tracey R. Brown Sebree,[3] unidentified employees of the State of Tennessee and the Metro Police Department, or officials in the local, state, and federal "chain of command." At a minimum, a civil rights complaint must allege that a named defendant played some role in violating a federal right or privilege, whether by active participation or by authorizing, approving, or knowingly acquiescing in the alleged violation. See Rollen v. Horton, No. 3:08-0227, 2008 WL 2997512, at *1 (M.D. Tenn. July 31, 2008) (citing, e.g., Dunn v. Tennessee, 697 F.2d 121, 128 (6th Cir. 1982), and Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)). Because Plaintiff has failed to make such allegations against any of these Defendants, they must be dismissed from this action.

### III. Conclusion

In light of the foregoing, Plaintiff's Section 1983 excessive force claim against Defendants Noble and McIntrye will be allowed to proceed for further development. All other claims and Defendants will be dismissed without prejudice. Plaintiff's state-court filings (Doc. Nos. 10–14, 16–20) will be terminated as pending motions, his motions for orders of garnishment (Doc. Nos. 21 and 25) will be denied as premature; and his motions for orders related to case management and mediation (Doc. Nos. 24, 27, and 28) will be denied without prejudice to renewal following service of process.

---

[3] The unnamed members of Walmart security, as well as Newton and Sebree, were apparently involved in what Plaintiff describes as a robbery at Walmart. (See Doc. No. 29 at 2; Doc. No. 32 at 2.) But in the absence of any allegation that these private individuals jointly participated with state actors to deprive Plaintiff of his federal rights, they are not proper defendants acting "under color of state law" for purposes of Section 1983. Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982).

12

An appropriate Order will enter.

                                                     */s/ Waverly D. Crenshaw, Jr.*
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13

Case 3:20-cv-00413   Document 34   Filed 07/31/20   Page 13 of 13 PageID #: 287